BENJAMIN B. NEWCOMB *vs.* BOSTON PROTECTIVE
DEPARTMENT.

Suffolk.    January 10, 1890. — February 27, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Personal Injuries — Negligence of Corporation — Public Charity.*

The Boston Protective Department, incorporated by the St. of 1874, c. 61, for the
protection of life and prevention of fires in the city of Boston, without capital
stock or income other than that derived from compulsory assessments upon all
the insurance companies, whether connected with it or not, doing business in the
city, is a private corporation for diminishing the cost of fire insurance in the
city to insurers, and is liable for the negligence of its servants, and not a public
charity, although in saving property it does not discriminate between that insured
and uninsured, and may, if it does not interfere with the city fire department,
enter buildings and assist at fires, and have the right of way in the streets.

TORT for personal injuries occasioned to the plaintiff, a cab
driver, by a collision between the cab and a wagon of the de-
fendant corporation, through the alleged negligence of the driver
of the wagon, a servant of the defendant.  After the former
decision, reported 146 Mass. 596, the case was tried in the
Superior Court, before *Sherman*, J., who refused to rule that
the defendant was a public charitable corporation, and was not
liable for the negligence of its servants; and, after a verdict
for the plaintiff, reported the case for the determination of this
court.  If the refusal so to rule was wrong, the verdict was to
be set aside and a new trial granted; otherwise, judgment was
to be entered on the verdict.  The facts appear in the opinion.

*R. M. Morse, Jr.*, for the defendant.

*W. Gaston & F. E. Snow*, for the plaintiff.

KNOWLTON, J.  It is contended that the defendant is a public
charitable corporation, and so is not liable for the negligence of
its servants.  It therefore becomes necessary to consider the act
which incorporated it, and the business in which it is engaged.

The St. of 1874, c. 61, created the defendant corporation, in
which membership was limited to officers for the time being of
incorporated fire insurance companies or associations, and agents
doing the business of fire insurance in the city of Boston.  It

gave the corporation the power to provide and maintain a corps of men and suitable apparatus for the purpose of discovering and preventing fires, and saving life and property at and after fires. It provided that there should be an annual meeting, at which each incorporated fire insurance company or association doing business in the city of Boston, whether its officers or agents were members of the defendant corporation or not, should have a right to be represented and to cast one vote; that at such meeting a majority of the whole number represented should determine whether the business of the corporation should be carried on during the ensuing year, and, if so, what should be the maximum amount expended in conducting it; that the whole amount so fixed should be assessed upon all the organizations and agencies engaged in the business of fire insurance in the city of Boston, in proportion to the several amounts of premiums returned as received by each ; and that such assessments should be collectible in the courts of law. The corporation was also empowered to require semiannually a statement to be furnished by all corporations, associations, underwriters, and agencies doing the business of fire insurance in the city of Boston, of the aggregate amount of premiums received for insuring property situated there during the preceding six months, and a penalty was provided for a failure to make such a statement when required.

It appeared in evidence, that the corporation has no capital stock, and derives no income from any other source than the assessments provided for in the statute. The directors levy assessments upon each insurance company in proportion to the amount of premiums returned as received by it, except that, for the purpose of determining the amount of assessments, premiums received for insuring buildings are reckoned at only one half as much as premiums received for insuring the contents of buildings. In levying assessments, no distinction is made between companies which are connected with the corporation and those which are not. The evidence was undisputed, that it would be impracticable for the men in attempting to protect property at fires to make a distinction between that which was insured and that which was not, and that no such distinction was made. The statute gives the employees of the corporation

a right to enter buildings and assist at fires, but they are not allowed to interfere with the members of the fire department of the city of Boston in the performance of their duties. They are also given certain rights in the streets on the way to fires; but these are made subordinate to the rights of the fire department.

Upon these facts, is the defendant a public charitable corporation? or is it a private corporation carrying on business for the pecuniary benefit of its members, and incidentally helping others, because it is impracticable to conduct its business without so doing? Clearly it is a private, and not a public corporation. *Louisville* v. *Louisville University*, 15 B. Mon. (Ky.) 642. *Dartmouth College* v. *Woodward*, 4 Wheat. 518. It seems to us also that it was not organized and is not conducted as a public charity, but to diminish the cost of fire insurance to underwriters. None but insurers can be members of it; none of its funds come from voluntary contributions, but they are all derived from assessments ordered by a vote of the majority. The projectors of the corporation seem to have intended to compel all insurance companies doing business in Boston to submit to the decision of the majority the question whether assessments shall be made upon all for the purpose of saving property insured. The nature of the work which the corporation is created to do is shown by this provision for the payment of the expenses. The statute, and the conduct of the corporators under it, indicate that a very large part of the property liable to be destroyed by fire in Boston is insured, and that the corporations which provide funds for the defendant are willing to maintain, at their own cost and for their own benefit, a protective department which may be incidentally beneficial to the few who are uninsured. The profits to the insurance companies from the work of the defendant are no less direct, in diminishing the amounts which they are liable to pay for losses, than if the amount saved at each fire were estimated, and required to be paid to the defendant by the companies benefited, and afterwards distributed in dividends.

The chief grounds on which it is contended that the work of this corporation is a public charity are the language of the statute, which refers to the preservation of life and property in general terms, and the practice of the defendant to have no re-

gard to ownership, and to make no distinction between insured and uninsured property. But these are of little significance in view of other provisions of the statute, and especially in view of the fact that it is impracticable for the defendant to conduct its business in any other way.

The defendant places great reliance upon *Fire Insurance Patrol* v. *Boyd*, 120 Penn. St. 624, which somewhat resembles the case at bar. But in that case membership in the corporation was open to everybody, and the expenses were wholly paid by voluntary contributions. The facts so differed from those in the present case, that, if the decision were binding in this jurisdiction, it would not be decisive of the question before us. We are of opinion that the defendant is not a public charitable corporation, and that it is liable for the negligence of its servants. See *Donnelly* v. *Boston Catholic Cemetery*, 146 Mass. 163; *Coe* v. *Washington Mills*, 149 Mass. 543.

*Judgment on the verdict.*