PLATTSMOUTH LODGE NO. 6, A. F. &. A. M., APPELLANT, V. CASS COUNTY, APPELLEE.

FILED JULY 12, 1907.   No. 14,844.

Taxation: EXEMPTIONS.  Under the agreed statement of facts in this case the property of Plattsmouth Lodge No. 6, A. F. & A. M., is not subject to taxation for the year 1905.

APPEAL from the district court for Cass county: PAUL JESSEN, JUDGE.  *Reversed.*

*S. M. Chapman* and *S. P. Davidson,* for appellant.

*C. A. Rawls, contra.*

BARNES, J.

Plattsmouth Lodge No. 6, Ancient Free and Accepted Masons, is the owner of the upper or second story of a building, known as "Rockwood Hall," situated on lot 2 of block 35, in the city of Plattsmouth, Cass county, Nebraska, and certain furniture used exclusively for lodge purposes, worth about $300, together with $500 in bank, which it claims is a fund used exclusively for charitable purposes. Said property was listed by the assessor of the precinct in which it is located for taxation for the year 1905, and was returned by him for that purpose to the proper taxing authorities. The lodge appeared before the board of equalization at the proper time and objected to the assessment of said property, for the reason that it was exempt from taxation because it was used exclusively for charitable purposes, and asked that it be stricken from the assessment roll. After a full hearing the board overruled the objection and request, and the property was assessed for taxation for that year. The lodge appealed from said order or judgment of the board to the district court for Cass county. On the trial the judgment of the board was affirmed, and an appeal was thereupon taken to this court.

In the district court the trial was had upon an agreed statement of facts, which has been made a part of the record by a bill of exceptions, and constitutes all of the evidence presented for our consideration. The character, objects and purposes of the appellant, the uses to which the property in question is applied, and the purposes for which it is held are fully set out and explained in the agreed statement of facts, from which we quote, as follows: "The objects and purposes of said lodge are to nurse, care for, and provide for its sick, afflicted and needy members and their families, and bury the dead, care for the widows of its deceased members, care for and educate their orphan children, and to inculcate in its members the principles of morality, temperance, benevolence and

charity, and teach them their duty and true fraternal relation to mankind; to contribute to the maintenance and support of the Masonic Home at Plattsmouth, Nebraska, an institution for the support and maintenance of destitute master masons, their widows and orphans, at the expense of the masonic order, without allowing such destitute master masons, their widows and orphans to become charges upon the state of Nebraska or the public, and promote the blessings of masonic privileges. That the revenue of said appellant lodge is provided by membership fees and dues, paid by persons joining said lodge and by the members thereof, and not from any revenue derived from any other source whatever. Also each member of said appellant lodge is required to pay annually for the support of the Masonic Home and any other special assessment levied against the members of said lodge by the grand lodge of the order, for the maintenance and support of said Home. That, in addition to other committees of said lodge, the worshipful master, junior and senior wardens of said appellant lodge are the committee of said lodge on charity, and as such are authorized by the laws and usages and customs of said order to draw from the funds of said lodge by an order of the worshipful master such sum or sums as may be deemed necessary by said committee for the relief of any one object at one time. Except as above, the individual members of said lodge are not entitled to draw or receive any pecuniary benefits from said lodge, and in no case are they entitled to receive, directly or indirectly, any pecuniary benefits, or any benefit or profit or private gain from said lodge, or in any manner participate in the distribution of the funds or property of the lodge. That said Plattsmouth Lodge No. 6 is not engaged in any business for profit or gain, and is prohibited by the rules and regulations of the masonic order, of which it is a part, from engaging in any business for gain, or for any purpose whatever, except relieving the needy persons, as above stated." It is

33

further stipulated: "Said lodge owns and uses the upper or second story of said building exclusively for lodge purposes, that is to say, for the purpose of holding its lodge meetings, and for no other purpose whatever, and that said lodge owns no other property, real or personal, except that so situated in the second story of said building, * * * and the money mentioned in the pleadings, all of which is held and used exclusively for said lodge purposes."

From the facts thus stipulated, it seems clear that the appellant is a charitable institution, and this view is supported by the following authorities: *Philadelphia v. Masonic Home,* 160 Pa. St. 572, 23 L. R. A. 545, where it was said in the opinion: "The appellee clearly is a charity. It provides for and maintains in the Masonic Home indigent, afflicted and aged freemasons. This too from voluntary contributions, without charge to the beneficiaries, and with no profit either to the corporation, or its officers. Not one of the corporate officers receives a cent of compensation for administering its affairs. Such unselfishness excites the admiration and approval of all friends of humanity. * * * 'The money to support them is contributed by different masonic lodges, individuals, masons, men and women; the receipts are always less than the expenses, and a deficit has to be made up at the end of each year; no one is benefited except the inmates; they are fed, clothed, and lodged during life, and buried at death at the expense of the home.' Of course, if this be not purely charity, nothing is." However, the property of the institution was there held taxable, because it was a restricted, and not a purely public charity. See also *Mayor and Aldermen of Savannah v. Solomon's Lodge,* 53 Ga. 93; *Fitterer v. Crawford,* 157 Mo. 51, 50 L. R. A. 191; *Bangor v. Masonic Lodge,* 73 Me. 428, 40 Am. Rep. 369; *City of Indianapolis v. Grand Master,* 25 Ind. 518; *Massenburg v. Grand Lodge,* 81 Ga. 212; *Mayor and City Council v. Grand Lodge,* 60 Md. 280; *State v. Board of Assessors,* 34 La. Ann. 574.

In this case, however, our decision must rest, not on the nature of the masonic institution, but on the use which appellant makes of the property in question according to the facts which are stipulated and admitted. Section 2, art. IX of the constitution, provides: "The property of the state, counties and municipal corporations, both real and personal, shall be exempt from taxation, and such other property as may be used exclusively for agricultural and horticultural societies, for school, religious, cemetery and charitable purposes, may be exempted from taxation, but such exemption shall be only by general law." To render effective the clause of the constitution above quoted, the legislature by section 13 of the present revenue law (Comp. St. 1905, ch. 77, art. I) has declared: "The following property shall be exempt from taxes: First. All property of the state, counties, and municipal corporations. Second. Such other property as may be used exclusively for agricultural and horticultural societies, for schools, religious, cemetery and charitable purposes."

This brings us to the real question involved in this controversy: Is the appellant's property which was listed for taxation used exclusively for charitable purposes? This question must be determined, not from our personal knowledge, if any, of the nature of the masonic order, its organization, its character, its aims or its purposes, but from the stipulated facts in evidence before us. It will be observed that the parties have agreed that the objects and purposes of appellant are to nurse, care and provide for its sick, afflicted and needy members and their families, and bury the dead; to care for the widows of its deceased members and educate their orphan children; to inculcate in its members the principles of morality, temperance, benevolence and charity, and teach them their true relation to mankind; to contribute to the maintenance and support of the masonic home at Plattsmouth, which is an institution for the support and maintenance of destitute master masons, their widows and orphans at the expense of the order, without allowing such destitute persons to

become charges upon the state of Nebraska or the public; and to promote the blessings of masonic privileges. It appears that the revenue of the appellant is provided by membership fees and dues paid by persons joining the lodge and its members, and that it has no revenue derived from any other source whatever; that each member is required to pay annually for the support of the masonic home above mentioned, and such other assessments as may be levied against the members of appellant lodge by the grand lodge of the order, for the support and maintenance of such home; that its committee on charity is authorized to draw from the funds of the appellant lodge by an order to be approved by the worshipful master such sum or sums of money as may be deemed necessary for the relief of any one object at one time; that the individual members of the lodge are not entitled to draw or receive any pecuniary benefits from the lodge whatever, that they can receive no benefit, gain or profit directly or indirectly from the funds of the lodge, or in any manner participate in the distribution of such funds; that the appellant is not engaged in any business for profit or gain, and is prohibited by the rules and regulations of the masonic order, of which it is a part, from engaging in any business for gain, or for any purpose whatever, except relieving the needy persons, as above stated. It thus appears to be stipulated that the appellant is an institution wholly charitable in its nature, aims and purposes. While we find in the stipulation the words "inculcate in its members the principles of morality, temperance, benevolence and charity, and teach them their duty and true fraternal relation to mankind; * * * and promote the blessings of masonic privileges," there is vouchsafed to us no explanation of the meaning of these expressions, and there is nothing contained in them which would indicate any other purpose than that of the dispensation of charity to the members of the order. It is further stipulated that the property in question is held and used by the appellant for the purpose of holding its lodge meetings, and for no

other purpose whatever; that the lodge owns no other personal or real property, and that the money above described is held and used exclusively for said lodge purposes, to wit, the relief of the distressed and needy members of the order.

In *Fitterer v. Crawford, supra,* the facts there agreed upon were stated in almost the identical language used in the stipulation in the case at bar. It was further agreed, however, in that case, that the property there in question was a three-story building, together with the ground on which it stood; that the first story was rented and used for a storeroom; that the second story was also rented; that the third story was used and occupied by the members of the lodge as a lodge room and ante-rooms in connection therewith. It was held that the property was taxable, for the sole reason that a portion of it was rented for gain and produced an income to the lodge. As to that part of the property used exclusively for lodge purposes, the court said: "It is upon the condition that the property is 'used exclusively for purely charitable purposes' that it is exempted from taxation. It must be remembered that it is not exempted from taxation simply because it belongs to the masonic lodge, but because of its exclusive use by the lodge for charitable purposes. Now as to the third story there can be no question as to its use for such purposes, but as to the other stories, and the ground, they are not so used. And being parts of the same building, and belonging to the same party, it could not be parceled out, and thus assessed and taxed, so as to bring that part of it, 'used exclusively for charitable purposes,' within that provision of the statute which exempts such property from taxation. * * * There is a very material difference between the 'use of a building exclusively for purely charitable purposes,' and renting it out, and then applying the proceeds arising therefrom to such purposes. To rent out a building is not to use it within the meaning of the statute, but in order to use it, it must be occupied or made use of. Moreover, by leasing the property the lodge

becomes the competitor of all persons having property to rent for similar purposes, and the plain and obvious meaning of the statute is that such property shall not be exempt from taxation."

As above stated, the second story of the building in question in this case, which is owned by the appellant, is used for lodge purposes only, and from the agreed statement of facts it appears that the lodge is conducted for charitable and benevolent purposes only. If so, then the property in question is used exclusively for such purposes. That such property is not subject to taxation seems to be clearly indicated by the opinion in *Young Men's Christian Ass'n v. Douglas County,* 60 Neb. 642. There the property sought to be taxed was certain real estate in the city of Omaha, upon which was erected a building used by the organization for the purpose of carrying forward its object, except the first floor thereof, which was rented for business purposes, and it was held that the portion of the property occupied for such purposes was not used exclusively for educational, charitable and religious work, and therefore was not exempt from taxation under the laws of this state. In the body of the opinion we find the following: "The language of the statute is clear and explicit. Under it all property used exclusively for the purposes mentioned is exempt from taxation * * * nor do we think that the proximity of one class of property to the other is material; the sole question being whether the use of the property renders it exempt. It is not necessary that the property should be such as to permit its separation into distinct and definite parcels or tracts of land. As is said in *Proprietors of Meeting House v. City of Lowell,* 42 Mass. 538, 541: 'There may be several distinct tenements under the same roof; and tenements are as essentially distinct, when one is under the other, as when one is by the side of the other.' A portion of appellant's property being used for business purposes, and, therefore, not within the purview and privilege of the statute referred to, we regard it as the evident intention

of the legislature that such property is and should be subject to the general revenue laws, as all other property in the state. * * * In reaching a conclusion in this case, we do not desire to be understood as holding that all of the property mentioned in the petition of appellant is subject to taxation, but only that part which is used for other than the purposes contemplated by the organization maintained by appellant."

It is contended, however, by the appellee that we must assume that the property in question is not used exclusively for charitable purposes, because it appears from the stipulation that the appellant in conducting its business has committees other than the one to dispense charity, and the rooms in question are used by its officers and members as a place of holding its meetings. A sufficient answer to this contention is that the stipulation falls far short of imparting any information from which we can draw such an inference. On the other hand we must take notice of the fact that every charitable institution in order to accomplish its objects must have and maintain an organization, must have its officers and committees, and must hold its meetings, otherwise it could accomplish nothing. Again, we should not be unmindful of the fact that our constitution was adopted in the year 1875, and the provisions of the present revenue law relating to exemptions, which is above quoted, was a part of the revenue law of 1879, and not until now have the taxing authorities ever claimed that the property of the masonic order, which is used for charitable purposes, is taxable. This contemporaneous construction of the constitution and statutes is entitled to great weight in solving the problem now before us. So we are of opinion that under the facts recited in the stipulation the property of the appellant in question in this case is exempt from taxation under the constitution and laws of this state. We do not wish, however, to be understood as holding that all property belonging to the masonic order is exempt from taxation, or that any of its property is exempt because it is such order. It is the

use of the property, and that alone, which determines the question, and the property of the order which is used for the purpose of gain or profit of any kind is surely taxable.

For the foregoing reasons, the judgment of the district court is reversed and the cause is remanded for further proceedings in accordance with this opinion.

REVERSED.

LETTON, J., concurring.

This case was submitted upon an agreed statement of facts, and no evidence was taken. Upon the facts stipulated I am inclined to think that the opinion is correct, although no explanation is made as to what constitutes "the blessings of masonic privileges," which it is said the institution is intended to promote. I think that in a case involving a question of such importance as the taxation of such associations, and where the opinion of the court is liable to be taken as indicating its views upon the whole subject, the case ought not to be tried upon an agreed stipulation of facts. The stipulation in this case, as is pointed out in the opinion, is substantially one which was prepared in a case submitted to the supreme court of Missouri, and upon which that court had expressed its opinion. It is much better in a case of such general interest and importance that witnesses be examined, and the tests of examination and cross-examination be used, so that the whole matter may be fully presented for the consideration of the court.

The main question is not free from doubt, and depends largely upon the particular statutory and constitutional provisions for exemption. In this connection, see *Bangor v. Masonic Lodge*, 73 Me. 428; *Massenburg v. Grand Lodge*, 81 Ga. 212, and cases cited on pages 216, 217 of that opinion.

As to any money specially set apart and devoted to the support of the Masonic Home, there can be no question

but that it is exempt from taxation. Of course, if *all* the property of the lodge is used exclusively for charitable purposes, as the stipulation recites, it is also exempt, but it would have been much more satisfactory if the case had been submitted upon testimony.