## No. 9967.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CHAFFEE, ET AL. *v.* THE DENVER & RIO GRANDE RAILROAD COMPANY EMPLOYES' RELIEF ASSOCIATION.

Decided January 9, 1922.

Action by a relief association against a county to recover taxes alleged to have been illegally assessed.   Judgment for plaintiff.

*Reversed.*

1.   TAXES AND TAXATION—*Property for Charitable Purposes—Exemption.*   Whether property alleged to be used for charitable purposes is exempt from taxation must depend upon the use made of the property, rather than upon the charitable character of the owner.

2.   WORDS AND PHRASES—*Charity.*   A charity in the legal sense may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the in-

fluehce of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.

3.  CORPORATIONS—*Charitable*—*Taxation.*   The property of a corporation organized to create a fund by the payment of monthly dues by its members, employes of a railroad company, which fund is used to secure and maintain a hospital for the benefit of such members, is not used exclusively for strictly charitable purposes, so as to be exempt from taxation under section 5, article 10, of the state Constitution, and section 5545, R. S. 1908.

*Error to the District Court of Chaffee County, Hon. James L. Cooper, Judge.*

Mr. WALLACE SCHOOLFIELD, for plaintiffs in error.

Mr. E. N. CLARK, Mr. J. G. McMURRY, for defendant in error.

*En banc.*

MR. JUSTICE ALLEN delivered the opinion of the court.

THIS is an action brought by The Denver & Rio Grande Railroad Company Employes' Relief Association, a corporation, against the board of county commissioners of the county of Chaffee and the county treasurer of Chaffee county, to recover back the taxes which it paid for the year 1913.   Plaintiff had judgment, and defendant brings the cause here for review.

The property which was assessed, and upon which the taxes were paid, consists of lots in the city of Salida.   The lots or parcels of land constitute a tract comprising about three acres.   There are, and were, buildings on the lots, and these are used for and in connection with a hospital.

The action was brought on the theory that plaintiff's land, and the buildings thereon, are and were exempt from taxation, under section 5, article 10, of the state Constitution, which section, so far as material here, reads as follows:

"Lots, with the buildings thereon, if said buildings are

used solely and exclusively for * * * strictly charitable purposes, * * * shall be exempt from taxation, unless otherwise provided by law."

The same exemption is provided by statute. Section 5545, subdivision 2, R. S. 1908.

The plaintiff contends, while the defendants deny, that the property in question, during the year 1913, and at other times, was "used solely and exclusively for strictly charitable purposes." The trial court upheld plaintiff's contention, and accordingly held the property to be exempt from taxation, and rendered judgment for the recovery of taxes paid.

The facts which are necessary and material to determine whether the property was used solely and exclusively for strictly charitable purposes, are not in dispute. Whether the property was so used is, upon the record, a question of law, and the ultimate question to be determined upon this review.

The plaintiff below is a corporation. The purpose or purposes for which it was incorporated is or are as set forth in its certificate of incorporation reading, in part, as follows:

"That this corporation is formed for the purpose of creating a common fund by the payment of monthly dues by the members thereof, to be used in buying, leasing or renting lands on which to build hospitals, the building * * * of hospitals, the furnishing and equipping of the same, * * * the employment of surgeons, * * * and of every proper and desirable agency in the treatment of all such injuries and diseases of its members as it may see fit to undertake, and to provide for their burial, and the relief of their families, when they die, in such manner as may be provided in the Constitution and by-laws of the Association."

It is clear from the foregoing that the primary purpose of plaintiff's incorporation was to create a common fund by the contribution of its members to secure and maintain a hospital for such members. The purpose is here men-

tioned because it throws light on the use made of the property. Whether it is exempt from taxation must depend on the use made of the property, rather than upon the charitable character of the owner. *Horton v. Colorado Springs Society*, 64 Colo. 529, 173 Pac. 61, L. R. A. 1918E, 966.

The complaint alleges, and there is no dispute as to the truth of the allegation, that plaintiff "has at all times heretofore and does now conform to the purpose set forth in said certificate."

That the benefits of the Association are intended to be limited to the members thereof, is shown by the following provisions of its Constitution and by-laws (italics ours) :

"Section 1. (Article 2) Under the restriction and provisions hereinafter enumerated, the general object of the Association shall be to *create a fund* for the purpose of furnishing medical and surgical treatment to its *members,* and to pay the funeral expenses of deceased *members,* and, in addition thereto, such relief for the family, in case of the death of a *member* as may be hereafter provided.

"Section 1. (Article 4) The *members* of this Association shall be required to pay monthly dues to the Treasurer of the Association.

"Section 1. (Article 7) The funds hereby created shall be devoted exclusively to the payment of the legitimate expenses of the Association, and the furnishing of relief to sick and disabled *employes,* as hereinafter more specifically set forth.

"Section 4. (Article 7) To secure admission to any hospital of the Association, and the treatment and medicines provided for in this constitution, the applicant must be a contributing employe of The Denver and Rio Grande Railroad Company, and must be identified as such.

"Section 1. (Article 4) The membership of this Association is involuntary, and includes all officers and regular employes of The Denver and Rio Grande Railroad Company."

The plaintiff's lots, with the buildings thereon, were, dur-

ing the year for which the taxes were paid, used for the purposes indicated by the above mentioned certificates of incorporation, and the Constitution and by-laws.

Are such purposes "strictly charitable purposes"? In other words, the question is, Is the hospital maintained as a charity? As to what constitutes a charity, both sides are satisfied with the definition given by Mr. Justice Gray in *Jackson v. Phillips*, 14 Allen, 539, 556, as follows:

"A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government."

This definition may also be found in a quotation in *Bishop v. Treasurer*, 37 Colo. 378, 384, 86 Pac. 1021.

Tested by the foregoing definition, any gift, donation, contribution, or enterprise involved in the instant case is not a charity. The manner in which, and the purposes for which, "the common fund" is obtained by plaintiff is similar to that described in *Haggerty v. St. Louis, etc. R. Co.*, 100 Mo. App. 424, 74 S. W. 456. Speaking with reference to the operation of a Relief Department of a Railroad Company, the court said at page 446:

"In our judgment the relief department, organized by the defendant company, in view of the regulations provided for its government, can not be classed as a charity without doing violence to every significance that word bears, either in popular or legal usage. It is not a charity within the definition of Justice Gray, above quoted, because the fund administered is not a gift by the employees who make contributions; much less by the railroad company which does not make any unless a deficit occurs. The fund is made up from sums contributed by members for their mutual benefit and is to be enjoyed by them if they suffer from sickness

or accident. It is, in effect, a provision made by the employees to insure a stipend for them to live on if they are disabled, and a benefit to their families if they die. In addition to this, if disabled by accident, their medical attendance is paid out of the fund. This strikes us as a purely business arrangement on the part of the employees of the railroad company."

One of the purposes of the relief department mentioned in that case was to prevent damage suits, but, aside from that fact, the court's views were as above quoted. The court mentioned, but did not follow, the case of *Union Pacific Ry. Co. v. Artist,* 60 Fed. 365, 19 U. S. App. 612, 9 C. C. A. 14, 23 L. R. A. 581, which is cited and relied on by plaintiff in the instant case.

The *Haggerty* case was approvingly cited in *Phillips v. St. Louis & S. F. R. R. Co.,* 211 Mo. 419, 111 S. W. 109, 124 Am. St. Rep. 786, 17 L. R. A. (N. S.) 1167, 14 Ann. Cases, 742, where it was held that The Employees' Hospital Association of the Frisco Line, a corporation under the direct control of the St. Louis and San Francisco Railway Company, which undertakes to furnish medical treatment to the employees of the railroad in consideration of monthly payments made by them, is not a "charitable institution," within the rule which exempts such institution from liability for negligence. The court said:

"It has, however, but few, if any, of the ear-marks of a voluntary benevolent association. Nor are there any ear-marks of a public charity. What is received is paid for by the recipients. Under the weight of authority it cannot be held to be a charitable institution."

The defendant in error, plaintiff below, cites *Union Pac. Ry. Co. v. Artist, supra,* where in the maintenance of a relief department the railroad contributed from $2,000 to $4,000 per month, and each of the employees contributed 25 cents per month. The department, and the hospital in connection therewith, was operated by the railroad company. The court said:

"Whatever may be said of the contributions of the em-

ploye, there is no question whatever but that the gift of $2,000 to $4,000 per month made by the company was purely voluntary and charitable."

In the instant case, the employees themselves, and not the railroad company, maintain what corresponds to a relief department. In the Artist Case the contributions of the railroad company were for the benefit of the employees, and hence charitable. Here the contributions are of the employees for their own benefit. Their association, the plaintiff corporation, is self-sustaining, and the railroad company has not been required, so far as the evidence shows, to make up any deficit in recent years.

The decision in the Artist Case, moreover, has not had general approval in other courts. The court in the Haggerty case, *supra,* refused to follow it. In *Arkansas Midland Rd. Co. v. Pearson,* 98 Ark. 399, 135 S. W. 917, 34 L. R. A. (N. S.) 317, the court folowed the Artist case to the extent of holding that the railroad company should be held only to ordinary care in the selection of competent and skillful physicians, but did not put the decision on the ground that the relief department is a charity. On that point the court thought otherwise. The opinion contains the following language:

"It (the hospital department of the railroad company) could not be said to be conducted as a charity, for only those employees who had contributed the fees deducted from their wages for its maintenance were entitled to enter there for treatment, and all the physicians and employees required to maintain and operate it were paid from such fund. Nor can it be said to have been administered by the railroad company out of pure philanthropy, since it may have had some benefit therefrom in decrease of amount of damages for injuries caused in the operation of the road, and the better and more efficient service to the company by its employees because of its maintenance."

In *Coe v. Washington Mills,* 149 Mass. 543, 21 N. E. 966, a relief society had regulations providing that every employe of the Washington Mills must be a member, and as

such member shall pay certain dues.  Out of the funds thus raised relief was given to sick members.  The court said:

"The contributions of the members were not in their nature, and were not intended to be, gifts for a general public use, but were for the advantage of the members only."

In the instant case, the contributions of the members of the plaintiff association "were for the advantage of the members only," and hence did not constitute a charity. Plaintiff furnishes its members with hospital facilities.  It is in no different position on that account than if it furnished its members, in case of sickness or injury, with funds with which to procure those facilities and treatment, as if it were a mutual benefit society.  It is no more a charitable institution than such a society.  In 37 Cyc. 931, it is said:

"Where the principal object of a fraternal order is to provide for the payment of sick benefits to members and special payments to the next of kin or designated beneficiaries of deceased members, out of funds raised by dues and assessments, it is not a charitable organization, but in the nature of an insurance company, and its property is not exempt (from taxation)."

Relief departments or associations are not, of course, insurance companies in such a sense as to bring them within the purview of statutes relating to such companies.  5 Labatt's Master and Servant, sec. 1922, p. 5988.  But they may be regarded as being in the nature of such companies. In *Miller v. C. B. & Q. Ry. Co.*, 65 Fed. 305, decided in the U. S. Circuit Court, District of Colorado, Hallett, District Judge, thus regarded the Burlington Voluntary Relief Department.

In a note, citing many cases, in 7 C. J. 1051, it is said:

"Where the exemption of property from taxation is involved, the distinction between benevolent or charitable associations and beneficial associations is sharply drawn. Laws of exemption are to be strictly construed.  A charity is held to mean a public charity, one whose benefits are

extended to needy persons generally, without regard to their relation to the members of the society, or to the fees paid. A beneficial society whose beneficence is confined to the members, their families, dependents or friends, and depends upon the contributions made, is not a charity, but a private institution for the mutual advantage of the members. The property of such a society is therefore not exempt from taxation under a law exempting the property of charities."

In 5 Labatt's Master and Servant, sec. 1922, p. 5988, the author states that "relief departments are not  *   *   * charitable institutions within the meaning of the doctrine which declares such institutions to be exempt from liability for the negligence of the physicians engaged by it." Other authorities more or less supporting the proposition that plaintiff is not a charitable institution and is not using its property for charitable purposes, are the following: *In re Dol's Estate,* 182 Cal. 159, 187 Pac. 428; *Newcomb v. Boston Protective Dept.,* 151 Mass. 215, 24 N. E. 39, 6 L. R. A. 778; *Young Men's, etc. Society v. Fall River,* 160 Mass. 409, 36 N. E. 57; *Susmann v. Y. M. C. A.,* 101 Wash. 493, 172 Pac. 554; and cases cited in note 75, in 11 C. J. 305.

For reasons stated in the authorities which we have above cited with approval, the lots or lands of the plaintiff association, with the buildings thereon, were not, when taxed at the times mentioned in the complaint, "used solely and exclusively for strictly charitable purposes," and therefore were not exempt from taxation under section 5, article 10, of the Constitution, or under section 5545, R. S. 1908. The trial court erred in holding to the contrary, and in giving judgment for plaintiff.

The judgment is reversed, and the cause remanded with directions to dismiss the action.

MR. JUSTICE TELLER and MR. JUSTICE BURKE agree with the conclusion.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE BAILEY not participating.